IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONALD EUGENE VANLEW,

    Plaintiff,

v.                                                       Case No. 14-4044-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

    Defendant.


MEMORANDUM AND ORDER

Ronald Eugene Vanlew applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 on February 28, 2011. The Commissioner of Social Security denied his application on upon initial review (Tr. 63-74, 76-89), and Vanlew sought review by an Administrative Law Judge (ALJ). Following a hearing on October 24, 2012, the ALJ determined that Vanlew was not disabled within the meaning of the Act. (Tr. 20-31). The decision of the Commissioner became final on March 27, 2014 when the Appeals Council declined (Tr. 1-4) Vanlew's request for review. (Tr. 11-13).

Vanlew then filed this appeal, raising three arguments. First, he argues that the ALJ should have found that he met the standards for a listed impairment. Second, he contends the ALJ erred in finding that he was able to perform a reduced range of light work. Third, he contends that the ALJ erred in the final step of his analysis, when he determined that Vanlew could perform other jobs in the national and local economy. For the reasons provided herein, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record, and the decision of the Commissioner is affirmed.

Plaintiff-claimant Vanlew was born on March 18, 1965, and has stated that he became disabled beginning May 16, 2006, due to ailments including headaches, migraines, nausea, and back pain. (Tr. 188). He has four years of college education, and has previously worked as a Pitney Bowes field technician, a manager of a fast food restaurant, a supervisor at two manufacturing companies, and a tire installer for Sam's Club. Vanlew has submitted four previous claims for Social Security disability. All were denied by the Commissioner. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 22-30).

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g). The court thus looks to whether those factual findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage

in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a

disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

In the present action, the ALJ determined that Vanlew had the severe impairments of migraine headaches, depression, and degenerative spinal disease. However, these impairments did not met the standards for a listed impairment. *See* 20 C.F.R. Part 404, Subpart P, Appx 1, 20 C.F.R. §§ 404.1520(d), 404. 1525, 404.1526. The court finds no error in this assessment.

The ALJ agreed that the medical records showed Vanlew suffered from some musculoskeletal impairment, but this did not affect his ability to walk or perform fine and gross movements, as defined by section 1.02. Further, the records failed to reflect any "nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required in listing 1.04." (Tr. 22-23). Specifically, the ALJ noted that spinal scans revealed "some degenerative disease without evidence of nerve root impingement or stenosis." (Tr. 23). In addition, the plaintiff's migraine headaches did not meet the standards for listings 1.18 or 12.04.

Plaintiff now attacks these findings as conclusory, but the court finds that the ALJ's opinion and findings are adequately grounded in the medical record, which is more fully discussed in subsequent portions of the ALJ's opinion. Moreover, the court must note that plaintiff, represented by counsel, did not argue at the ALJ hearing for a finding of disability based on meeting the standard for a listed impairment. (Tr. 27, 36-37). Rather, counsel argued that Vanlew was disabled at step five because his impairments "would rule him out of competitive employment in that he would be unable to sustain work on a regular and continuing basis." (Tr. 37). Similarly, when Vanlew sought review by the Appeals Council, he made no contention that he met the standards for any listed impairment. Rather, he simply

4

argued that he could not perform "any substantial gainful activity" and that the ALJ's decision was "not supported by substantial evidence." (Tr. 12).

The ALJ's decision relating to the listed impairments is supported by substantial evidence. The record indicates a minor abnormality in Vanlew's neck. (Tr. 719). Scans conducted in 2012 showed some degeneration, but did not show impingement of the nerve. Rather, the examiner reported that the disc protrusion at L5/S1 "does touch" the root of the nerve, and that there is some narrowing at L4-L5, but that "[t]his does not appear to create a significant nerve root entrapment as there is still fat around the nerve root." (Tr. 1332-33).

The plaintiff's Reply cites other evidence in the record indicating some suport for the existence of nerve root impingement. That evidence is clearly equivocal.

Dr. Kevin Balter of Platte Valley Pain Care physically examined Vanlew on November, 11, 2010, and reported his impression that Vanlew suffered from neck pain which "I *suspect* … is due to cervical facet joint arthralgia" making it "*possible* [that] the neck pain is responsible for the patient's reported constant daily mild to moderate headaches." (Tr. 453) (emphasis added). Dr. Balter further observed with respect to the reported back pain that this "might have components of the disc and lumbar facet and sacroiliac joint pain bilaterally associated with intermittent left leg pain and partial numbness" and that his was "presumably" caused by either nerve impingement or irritation. (*Id*.) This possibility was premised on Dr. Balter's own relatively limited examination, with additional reliance on prior VA diagnostic testing. Dr. Balter summarized these tests as indicating "[m]ild degenerate disc disease," some postsurgical changes which were "[o]therwise unremarkable," and disc bulges with "[m]ild bilateral neural … narrowing" at L5/S1 but with "[n]o definite nerve root impingement." (Tr. 449).

Dr. Agapita Lorenzo conducted a motor conductivity examination September 29, 2011, which indicated sensitivity "within normal limits" but some neurogenic changes at L3-4

"which are consistent with radiculopathy." (Tr. 1063). Dr. Lorenzo made no finding of impingement, and Dr. Balter later characterized the MRI testing of L3/4, L4/5 and L5/S1 as only showing "[m]ild disc bulges."

Similarly, the plaintiff's migraine headaches were unaccompanied by evidence of neurological impairments and "[s]cans of the brain were unremarkable." (Tr. 23). This finding is consistent with the medical record, which indicated that Vanlew's headaches were moderate and that he "can handle them." (Tr. 764, 1155). As with the musculoskeletal impairment, the plaintiff fails to show now how the headaches actually met or equaled the standard for any listed impairment.

The ALJ decided that Vanlew had failed to meet his burden of proof of meeting the standard for a listed impairment, and adequately explained his decision under the circumstances of the case.

The ALJ found that plaintiff retained the functional capacity to perform a less than full range of light work. That is, the ALJ found he can perform routine and low-complexity occupations, lifting or carrying twenty pounds occasionally and ten pounds frequently, walking or standing six hours in an eight hour workday, or sitting for six hours. He cannot perform jobs requiring constant pushing or pulling, reaching overhead, or continuous trunk twisting to maximum of rotation in, and he would need to be absent from work one to two days a month. (Tr. 24).

The plaintiff attacks the ALJ's assessment of his residual functional capacity, arguing that the ALJ erred in finding that his statements were less than fully credible, and that the ALJ should have given greater weight to records and findings from the Veterans Administration (VA), which has authorized service-related benefits for the plaintiff.

Here, the ALJ noted the general representations made by Vanlew and his wife as to his level of activity. He can care for himself and his pets, and helps with the household chores. He states that he vacuums, although he may take a couple of days to finish. He can drive, shop and handle finances. Vanlew's wife reported that he spends sixteen to eighteen hours sleeping each day. Otherwise, he watches television and plays computer games. He also attends church, and visits with friends two to three times each week.

At the ALJ hearing, Vanlew stated that he experiences a major headache once a week. These range in severity from 3 to a 7 or 8, on a scale in which 1 is no pain and 10 is excruciating. When he experiences these headaches, he will take medication and go into a dark room. If the headache is particularly severe, he will go to the emergency room for a shot. He has done this about three times in the previous year. He also experiences back pain and depression.

Vanlew receives medication and treatment for these conditions from various sources, including the VA center in Grand Island, Nebraska, and Platte Valley Pain Care. These trips occur several times a month, and require a two hour drive from Vanlew's home in Norton, Kansas. Vanlew will drive himself, unless he is getting an injection, in which case someone will accompany him. Vanlew drove himself the 94 miles to the ALJ hearing.

Vanlew is going through a divorce, has sold his house, and is now living with friends.

The ALJ determined that Vanlew does have some impairments which may cause some limitations, but ultimately found that he was not fully credible as to the extent of the limitations he asserted. The ALJ first noted that the activities of daily living described by Vanlew were inconsistent with the severity of limitation he claimed.

> A review of the evidence does not indicate significant limitations in daily activities. He is able to care for himself and help with household chores. In the function report, he indicated the ability to do things like vacuum and mow. He was able to drive, shop and handle finances. Treatment records indicate that he remained active doing things like fencing, plumbing, painting and car repair. He

7

is able to drive for treatment a couple times a month, which is a distance of two hours. His wife repot1ed that he did spent time sleeping, but also spent time watching television, playing computer games and attending church. At the hearing, he stated that he spends his day walking the dog, driving around and doing handyman projects.

(Tr. 28).

The ALJ also noted other inconsistencies in Vanlew's presentation. He testified at the hearing that he can stand for only twenty minutes, and that he can lift or carry only ten pounds. In his functional report submitted to the Commissioner, Vanlew stated he could lift or carry twenty. The medical records indicate that his medications are generally effective and without side effects, and therapy has allowed him to engage in a variety of physical activities. These activities included building a wooden fence and shed, plumbing and painting. While Vanlew testified that his headaches range from a severity of 3 to 7 or 8, the treatment records generally indicate reports of pain from 2 to 3.

Vanlew testified to experiencing major headaches once a week. The medical records indicate a frequency of once a month, that a neurological examination and CT scan in January, 2010, indicated unremarkable results, and that Vanlew's headaches have improved over time as his medications have been adjusted. While Vanlew does suffer from depression apparently linked to his divorce, with a corresponding drop in Global Assessment of Functioning (GAF) scores, subsequent GAF testing indicated moderate limitations on Vanlew's functioning. (Tr. 1255).

A claimant's subjective complaints of impairment are evaluated for credibility under a three-step analysis that asks:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

8

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The ALJ "must consider the entire case record, including the objective medical evidence" to determine whether plaintiff's subjective claims are credible. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). The ALJ should consider "a claimant's persistent attempts to find relief for her pain and her willingness to try any prescribed treatment prescribed," regularity of contact with her doctor, possible psychological disorders that may combine with physical problems, daily activities, and daily dosage and effectiveness of medications. *Keyes-Zachary*, 695 F.3d at 1167.

The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies evidence relied on in the credibility analysis. *Id*. (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 WL 374186, *4) (July 2, 1996).

Recognizing that "some claimants exaggerate symptoms for the purposes of obtaining government benefits," (*Bolan v. Barnhart*, 212 F. Supp. 2d 1248, 1260 (D. Kan. 2002) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)), an ALJ's credibility determinations are generally treated as binding on review. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. *Wilson*, 602 F.3d at 1144; *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). The court cannot displace the ALJ's choice between two fairly conflicting views even though the court

9

may have justifiably made a different choice. *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007). However, notwithstanding the deference generally given to an ALJ's credibility determination, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson*, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998)).

While Vanlew now points to the frequency of his medical contacts and amount of medication (Dkt. 20, at 9) as evidence bolstering his credibility, the ALJ explicitly reviewed all the "voluminous" medical records (Tr. 26), and acknowledged the extent of Vanlew's medical history. The reply brief, however, makes no note of the many inconsistencies in Vanlew's stories, and the court finds no basis for altering the ALJ's credibility determination, which was predicated on the entire record.

Next, Vanlew argues that the ALJ erred in failing to give account to the disability status given to him by the VA, as well as the opinions issued by VA physicians. Specifically, Dr. Isaac Witkowski wrote on August 22, 2011:

> Concerning employability, it appears that the neck would interfere with physical employment, and it is also at least as likely as not to interfere with employment, because of difficulty turning and holding and moving the head and neck, especially if needing to be in the same position. Therefore, the cervical spine issue is likely to interfere with employment and some activities of daily life.

(Tr. 1086).

On January 9, 2010, Dr. Ryan Arnold examined Vanlew who reported pain in the spine and shoulders. Vanlew told Dr. Arnold that he was experiencing shoulder and neck pain, along with "episodes of paralysis as a result of the migraine headaches … about once a month." (Tr. 637). Dr. Arnold reported that Vanlew appeared to have some limitations in his range of movement, but that "I am unable to determine the exact degrees of this limitation" which would occur during flare-ups. (Tr. 638).

The ALJ accurately noted that the determination by the VA is not dispositive of the issue of disability. Rather, it is simply evidence which the ALJ must consider and – if found to be unpersuasive – explain the reason for that determination. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005). Here, the ALJ did not summarily reject the VA's conclusions, and in fact integrated the limitations on Vanlew's range of motion to expressly refrain from working for up to two days each month.

Dr. Witkowski noted that Vanlew's medicine helped his condition, and that these were "used intermittently." (Tr. 1085). Vanlew told Dr. Witkowski of his pain and that his "neck does not interfere with most daily activities," although as a result "he plays no sports or recreation." (*Id.*) Dr. Witkowski performed no testing beyond the use of a goniometer and a *Deluca* examination, with Vanlew reporting "mild to moderate pain." Dr. Witkowksi wrote that he "could not determine additional limitation following repetitive use during flareups, as this would be speculation." (*Id.*) He also noted that Vanlew did not appear to have any neurological difficulty in his upper extremities, and that "[t]his gentleman does not appear to have intervertebral disc syndrome where incapacitating episodes of neck pain have been present over the last 12 months." (Tr. 1086). The ALJ explicitly reviewed the VA records, noting that they "are voluminous and at times repetitive." (Tr. 26). He then discussed in detail the evidence from these records. (*Id.*) The court finds that the ALJ adequately explained the nature of his reasoning, and that his assessment of Vanlew's residual functional capacity is supported by substantial evidence.

The ALJ accurately concluded that "[n]o doctor who has treated or examined the claimant has stated or implied that he is disabled or seriously incapacitated." (Tr. 29). Rather, VA physicians indicated a limited ability for sedentary employment in the absence of restrictions on his physical movements, including reaching and turning. The ALJ adequately

11

synthesized evidence from the entire medical record, including evidence from the state agency medical consultants indicating Vanlew would be able to perform light work with exertional restrictions, and incorporated such restrictions in a capacity assessment which would permit Vanlew to perform work in the national economy.

Finally, the court also finds no error in the ALJ's conclusion at step five. Vanlew argues that the ALJ's determination rests on a faulty hypothetical question posed to the vocational expert, including the need for workplace absences. The ALJ here appropriately questioned the vocational expert as to those functional limitations which he found to be supported by substantial evidence. The expert responded to the written interrogatory by the ALJ that "[g]enerally employers will allow [an] individual to be absent from work 1-2 days a month at a maximum," and that in the event of such absences "this is within the normal tolerances." (Tr. 293). In contrast, "[i]f an individual is absent more than 1 time per week, this is outside normal tolerances." (*Id*.)  As indicated above, the ALJ's determination of the need for absences on a monthly basis rather than weekly basis is founded on substantial evidence.

IT IS THEREFORE ORDERED this 25th day of September, 2015, that the judgment of the Commissioner is affirmed.

      s/ J. Thomas Marten  
      J. THOMAS MARTEN, JUDGE